### SEASTRUNK et al. v. KIDD et al.
#### No. 1256.

Court of Civil Appeals of Texas. Waco. Oct. 6, 1932.

Rehearing Denied Nov. 3, 1932.

S. J. T. Smith, of Waco, for appellants.

Poage & Neff, of Waco, and B. Jay Jackson, of Cleburne, for appellees.

GALLAGHER, C. J.

This appeal is prosecuted by R. L. Seastrunk and D. A. Platt from a judgment of the district court of McLennan county, Seventy-Fourth judicial district, setting aside a former judgment theretofore rendered in said court in which Henrietta Dailey, now deceased, recovered from the unknown heirs of her deceased husband, Fred Dailey, title and possession of lot 19 in block 2 of the Mittie Renick addition to East Waco, and awarding to appellees Zuma Kidd and Theodora Bly a recovery against these appellants, their tenant, F. B. Teague, and Hixie Haines, and various others as heirs of Henrietta Dailey, of title and possession of said lot, and awarding appellants a recovery for improvements made thereon in good faith.

Fred Dailey married Henrietta Haines in 1883. The property in controversy in this case was conveyed to him and J. R. Ritchie by Mittie Renick on the 18th day of July, 1887, for a recited consideration of $10 cash paid and a note for $61. On the 27th of December, 1889, said Ritchie conveyed his undivided half interest in said lot to H. A. Guess for a recited consideration of $65 cash. On July 1, 1890, said Ritchie and Fred Dailey joined in a deed conveying to said Guess the north end of said lot. Why Ritchie joined in said deed notwithstanding he had theretofore already conveyed to said Guess all his interest in said lot was not shown. Thereafter said Guess conveyed all the interest he acquired from both Dailey and Ritchie in said lot under their respective

deeds to T. D. Hays, who in turn conveyed same to Banton Moore, who thereafter, on July 4, 1900, for a recited consideration of $80 cash in hand paid, conveyed said interest in said lot to said Dailey. Dailey died January 20, 1911. His widow, Henrietta, continued to reside upon said lot and use and occupy the same as a homestead. No children were born of the marriage of Fred and Henrietta Dailey, but he left surviving him two daughters by a former marriage, named Zuma and Mercedes (also called Mercy Dee).

Henrietta Dailey, on the 12th day of May, 1927, in said Seventy-Fourth district court, instituted suit against Banton Moore and the heirs of Fred Dailey to recover title and possession of said lot. Said cause was numbered 8520 on the civil docket of said court. As a basis for the issuance of citation for service by publication, she filed in said cause her affidavit that the heirs of said Fred Dailey, after diligent search and inquiry made by her, were unknown to her, and that said Moore was a nonresident of the state. Citation was duly issued and served by publishing the same in the manner and form and for the length of time required by law. The cause came on for trial on the 14th day of June, 1927, at which time she dismissed her suit against said Moore, and recovered judgment against the unknown heirs of Fred Dailey, deceased, for the title and possession of said lot. She, on the 5th day of November thereafter, conveyed said lot to appellants for a recited consideration aggregating $3,500. Fred Dailey's daughter Zuma, above mentioned, had prior to his death married her coappellee, William Kidd. She and her husband resided at or near Cleburne, Tex., from the time of her marriage to the trial of this cause. She visited her father shortly before his death and also visited his widow, Henrietta Dailey, after his death. Neither she nor her husband knew of the institution of said suit nor of the judgment rendered therein, for more than two years after the date thereof. Fred Dailey's daughter Mercedes lived in California. She died in 1929, leaving appellee Theodora Bly as her only child and heir.

Appellees Zuma Kidd and husband and Theodora Bly, on February 14, 1930, instituted suit in the district court of McLennan county, Fifty-Fourth judicial district, against appellants Seastrunk and Platt and their tenant, Teague, in trespass to try title to recover said land as heirs of Fred Dailey, deceased. Said cause was numbered 15605. Said appellants thereafter, on the 3d day of May, 1930, instituted suit in the district court of McLennan county, Seventy-Fourth judicial district, against Hixie Haines and others as heirs and the only heirs at law of Henrietta Dailey, deceased, to set aside the judgment theretofore rendered in said district court in cause No. 8520, in which said Henrietta Dailey recovered said lot of the unknown heirs of Fred Dailey. Said cause was numbered 11279. Said cause No. 15605 was transferred from the Fifty-Fourth to said Seventy-Fourth judicial district court, and thereafter by order of the court consolidated with said cause No. 11279 and continued under the latter number. Both plaintiffs and defendants in the consolidated cause filed amended pleadings.

The case was submitted to a jury on special issues. The issues submitted by the court, with the answers of the jury thereto, were as follows:

"No. 1: Do you find from a preponderance of the evidence that Henrietta Daily on the 12th day of May, 1927, knew the name of Zuma Kidd? Answer: Yes.

"No. 2: Do you find from a preponderance of the evidence that Henrietta Daily at the time the judgment was entered in cause No. 8520, knew the name of Zuma Kidd? Answer: Yes.

"No. 3: Do you find from a preponderance of the evidence that Henrietta Daily, on the 12th day of May, 1927, knew the name of Theodora Bly? Answer: No.

"No. 4: Do you find from a preponderance of the evidence that Henrietta Daily, at the time judgment was entered in cause No. 8520, knew the name of Theodora Bly? Answer: No.

"No. 5: Do you find from a preponderance of the evidence that when Henrietta Daily made the affidavit in cause No. 8520 as to the names of the heirs of Fred Daily, she did so with the intent and design of fraudulently depriving the said Zuma Kidd and Theodora Bly of any property rights, if any, they might have in said suit? Answer: Yes.

"No. 6: Do you find from a preponderance of the evidence that Fred Daily purchased the property in question out of funds acquired by him before his marriage to Henrietta Daily? Answer: Yes.

"No. 7: Do you find from a preponderance of the evidence that at the time Seastrunk and Platt made the improvement, if any, on said property, they reasonably believed that they owned said property? Answer: Yes.

"No. 8: What, if anything, do you find from a preponderance of the evidence, is the present reasonable value of said improvements, if any? Answer: $800.00."

The court, at the instance of appellees Zuma Kidd and Theodora Bly, submitted certain issues to the jury for determination, which issues, with the answers returned thereto, were as follows:

"No. 3: Do you find from the preponderance of the evidence that Zuma Kidd and Mercy Dee Dailey were the children and

the only children of Fred Dailey? Answer: Yes.

"No. 4: Do you find from the preponderance of the evidence that Theodora Bly was the child and the only child of Mercy Dee Dailey? Answer: Yes."

The court, upon consideration of said verdict, rendered judgment in favor of appellees Zuma Kidd and Theodora Bly against appellants and all the other appellees setting aside said former judgment and for title to and possession of said lot of land. The court also rendered judgment in favor of appellants Seastrunk and Platt against appellees Zuma Kidd and Theodora Bly for the sum of $800, the value of improvements made by them upon said lot subsequent to their purchase of the same from Henrietta Dailey. The court ordered the enforcement of said judgment in the manner provided by statute in such cases.

### Opinion.

Appellants present several assignments of error in which they assert that the court overruled their plea in abatement and certain special exceptions contained in their amended answer filed in the consolidated suit, and erred in doing so. The transcript fails to show that said plea in abatement or said exceptions were ever called to the attention of the court or that any rulings thereon were made. We have, however, in view of another trial, examined and considered the contentions presented by appellants in said assignments, and have reached the conclusion that, if the court did overrule such plea in abatement and exceptions, he did not err in doing so.

■ Appellants present an assignment of error in which they complain of the refusal of the court to instruct the jury peremptorily to return a verdict in their favor. One specific contention advanced under said assignment is that appellants were not entitled to have the judgment in cause No. 8520, in which Henrietta Dailey recovered judgment for the title and possession of the lot here in controversy, set aside, because they did not institute suit to secure such relief for more than two years after the date thereof. Said judgment in cause No. 8520 was rendered on the 14th day of June, 1927. Appellants' original action to set the same aside was not filed until May 3, 1930, more than two years after such judgment was rendered.

Appellants proved affirmatively that they did not know of the institution or pendency of said suit; that they did not appear therein in person or by an attorney, and that they never learned that such judgment had been rendered until about two months before they instituted suit to set the same aside. Article 2236 of the Revised Statutes provides that in suits in which judgment has been rendered on service of process by publication, where the defendant has not appeared in person or by attorney of his own selection, the court may grant a new trial upon petition of the defendant showing good cause, supported by affidavit, filed within two years after such judgment was rendered. The bill of review so provided for amounts to no more than a new trial, permitted by virtue of statute to be filed and heard after the adjournment of the term. It is but a continuance of the original suit, and does not possess the character of an independent action in equity to review and vacate such judgment. This proceeding was not instituted nor prosecuted under the authority of said statute. It is an independent suit in equity to vacate and annul said judgment on the ground that the affidavit made by Henrietta Dailey in said cause for service by publication was false and fraudulent, and the service predicated thereon and the judgment rendered in pursuance of such service were void or voidable and subject to be vacated upon judicial ascertainment of said facts. Bonner v. Pearson (Tex. Civ. App.) 7 S.W.(2d) 930, 932, pars. 2 and 3. Such an action is within the provisions of Revised Statutes, art. 5529, and may be brought at any time within four years after the rendition of the judgment so attacked. Rose v. Darby, 33 Tex. Civ. App. 341, 76 S. W. 799, 800, and authorities there cited; McLean v. Stith, 50 Tex. Civ. App. 323, 112 S. W. 355, 361 (writ refused); Stewart v. Robbins, 27 Tex. Civ. App. 188, 65 S. W. 899, 901 (writ refused); State v. Dashiell, 32 Tex. Civ. App. 454, 74 S. W. 779, 781; Heidenheimer v. Loring, 6 Tex. Civ. App. 560, 26 S. W. 99, 102; Godshalk v. Martin (Tex. Civ. App.) 200 S. W. 535, 536, par. 3; Garza v. Kenedy (Tex. Com. App.) 299 S. W. 231, 233, par. 5, 234, par. 12, and authorities there cited. Appellants' contention is overruled.

■■ Appellants assign as error the action of the court in submitting over their objection issues Nos. 1, 3, and 5, respectively, as above recited, inquiring whether Henrietta Dailey, at the time she made the affidavit for citation by publication in cause No. 8520, knew the names of Zuma Kidd and Theodora Bly, and whether she made said affidavit with the fraudulent intent of depriving them of property rights. Appellants' objections to the submission of said issues were, in substance, that the evidence was wholly insufficient to justify the submission thereof. We think the testimony above recited, together with other testimony in the record which it is not necessary to here recite, fully justified the submission of such inquiries with reference to Zuma Kidd. Theodora Bly, however, claims under her deceased mother, Mercedes (or Mercy Dee) Dailey, also referred to in the testimony as

Mercedes Morgan. There is affirmative and uncontradicted testimony in the record that Mercedes died in 1929, long after the making of said affidavit and the rendition of the judgment in said cause. Theodora Bly was not then an heir of Fred Dailey, and had no interest in his estate. Such issues upon another trial should, of course, be framed in the light of the testimony before the court and jury at the time.

Appellants assign as error the action of the court in submitting over their objection special issue No. 6 as above recited, inquiring whether Fred Dailey purchased the lot involved in this suit out of funds acquired by him before his marriage to Henrietta Dailey. Appellants' objection to the submission of said issue was, in substance, that there was no competent evidence in the record to justify such submission. Fred and Henrietta were married in 1883. Said lot was conveyed by Mittie Renick on the 18th of July, 1887, to Fred Dailey and J. R. Ritchie for a recited consideration of $10 cash and a note for $61. On July 1, 1890, Dailey and Ritchie conveyed the north end of said lot to Guess. Dailey reacquired the same on July 4, 1900. The deed conveying the same to him recited a cash consideration. Both said conveyances to him were during the existence of the marriage relation between him and Henrietta. The property was therefore prima facie community. The appellees Zuma Kidd and Theodora Bly alleged that said lot was purchased out of funds accumulated by Fred Dailey prior to his marriage to Henrietta, and was therefore in fact his separate property. The burden was upon them to establish such allegation by affirmative evidence. The only testimony introduced on this issue is the testimony of their witness Alf Batts. He testified that he was a brother of Fred Dailey; that he resided in Waco in 1881 and 1882; that he then went to Robertson county and resided there until November, 1895, when he returned to Waco; that Fred separated from his first wife in 1877, and married Henrietta in 1883; that Fred had five acres in watermelons in 1882; that he also had seven or eight head of cattle, two mules, three horses, a wagon, and about fifty head of hogs, and that he always had a little money; that this lot was bought in July or August, 1882; that he could not tell how much money Fred had about that time; that he turned over to him $125 as the proceeds of the sale of watermelons, and that Fred spent it on the lot because it cost that much; that he was present when the deal was made, but he did not see the money paid; that the money was paid over at the courthouse; that he knew this because "I done told you he come back with the deed and title and lien to the lot"; that all this happened close to fifty years ago. The testimony of said witness did not in any way disclose that he knew the technical description of this lot such as would be necessary to identify the same either in a transaction of purchase or in a deed of conveyance thereto. He did not attempt to give a word of the conversation which he testified constituted "the deal" for said lot which he said was made in his presence. He did not even claim to have seen or examined the "deed, title and lien" to the lot which he said Fred brought back from the courthouse. There is nothing to indicate that he knew the language necessary to constitute a paper a written conveyance of land. We think this testimony amounts to no more than a conclusion of the witness, admittedly based on what Fred told him. Such testimony has been held insufficient to support a judgment. Black, Sivalls & Bryson, Inc., v. Operators' Oil & Gas Co. (Tex. Civ. App.) 37 S.W.(2d) 313, 314, pars. 1 and 2.

As hereinbefore stated, the record title, presented and vouched for by appellants, showed that Mittie Renick conveyed the lot in controversy to Fred Dailey and Ritchie in 1887, five years after the purported transaction referred to in Batts' testimony, and four years after Fred's marriage to Henrietta. There was absolutely no attempt to show that the $5, Dailey's half of the cash consideration recited in said deed, was paid out of money or out of the proceeds of property which Dailey owned before such marriage. The issue as submitted dealt with said lot as a whole. As hereinbefore recited, Fred Dailey sold the north part of said lot for a valuable consideration about two years after he purchased his interest therein, and had no further interest in such north part until July 4, 1900, when he repurchased the same for a valuable consideration. This was seventeen years after his marriage to Henrietta and eighteen years after the purported purchase testified to by Alf Batts. We think that Dailey's recorded transactions with reference to this lot of land as a whole effectively rebut any possibility that the deed from Mittie Renick to him was based on a cash consideration paid in 1882. Certainly, it could not be contended that the deed by which the north part of the lot was reconveyed by Moore to Dailey in 1900 was based in whole or in part on such consideration. Oral testimony wholly at variance with undisputed facts shown of record must yield thereto. Neill v. Pryor (Tex. Civ. App.) 222 S. W. 296, 298, par. 6; S. A. & A. P. Ry. Co. v. Biggs (Tex. Civ. App.) 283 S. W. 627, 631, pars. 3 and 4; H. E. & W. T. Ry. Co. v. Lavine (Tex. Civ. App.) 255 S. W. 448, 450, par. 1; Schmitt v. Standard Oil Co. (Mo. App.) 221 S. W. 389, 390, par. 1; Scroggins v. Metropolitan Street Railway, 138 Mo. App. 215, 120 S. W. 731, 732; St. L. & S. F. Ry. Co. v. Stewart, 137 Ark. 6, 207 S.

W. 440, 441, pars. 1 and 2; Waters-Pierce Oil Co. v. Knisel, 79 Ark. 608, 96 S. W. 342, 347, et seq. The testimony of Alf Batts, standing, as it does, alone, did not warrant the submission of such issue.

The judgment of the trial court is reversed, and the cause remanded.